# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christine Villarreal,<br><br>            Plaintiff,<br><br>v.<br><br>Caremark LLC,<br><br>            Defendant. | No. CV-14-00652-PHX-DJH<br><br>**ORDER** |

The named plaintiff, Christine Villarreal alleges, on behalf of herself and others similarly situated,[1] that defendant Caremark LLC violated the Fair Labor Standards Act of 1983, as amended, 29 U.S.C. § 201 *et seq.* ("FSLA"), by failing to pay overtime to certain of its employees. Currently pending before the Court is Caremark's motion to dismiss Plaintiff's First Amended Complaint ("FAC")[2] for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. 31[3]). For the reasons

---

[1] Several have already filed their consent forms. *See*, *e.g.*, Docs. 14, 24, 27, 30, and 41. After Caremark's motion to dismiss was fully briefed though, Ms. Villarreal filed a motion for conditional class certification and distribution of judicial notice (Doc. 36). That motion is not yet fully briefed, however.

[2] In response to the original complaint, Caremark filed a motion to dismiss, which the parties stipulated to withdraw based upon the filing of the FAC. Stip. (Doc. 28).

[3] Caremark's motion is docket entry 31 on the District of Arizona's case management and electronic case filing ("CM/ECF") system. Roughly a week after that filing, however, Caremark filed a Notice of Errata, attaching a corrected version of its dismissal motion. That corrected version made only minor changes, but to be accurate, the cites herein are to the corrected version, *i.e.*, Doc. 32-1.

1

set forth below, the Court denies in part and grants in part Caremark's motion.

**I. Background[4]**

Caremark "provides pharmaceutical health care services and products to consumers nationwide[,]"with employees in 45 states within the United States. (Doc. 26 at 2, ¶¶ 5- 6). Plaintiff Villarreal is a Caremark employee at its Scottsdale, Arizona office.[5] (*Id*. at 3, ¶¶ 7-8). Prior to the end of 2013, Caremark had variously referred to Ms. Villarreal as a "Client Benefits Analyst" and "Benefits Specialist." (*Id*. at 3, ¶ 7). At the end of 2013, however, Caremark changed her job title to "Coding Consultant[.]" (*Id*.). Regardless of her title, according to Ms. Villarreal, her "job duties have remained consistent" during the relevant time frame. (*Id.*) Among other things, Ms. Villarreal "enter[s] information pertaining to a drug into [Caremark's] system based on parameters set by [Caremark's] clients." (*Id.* at 5, ¶ 25). It was beyond Ms. Villarreal's "authority" when entering that information, however, "to determine which drugs would be covered or which parameters would be used." (*Id*.).

"Upon information and belief," Ms. Villarreal alleges that Caremark informed her that effective March 30, 2014, "it reclassified [her] position[] to non-exempt[.]" (*Id*. at 4, ¶ 15). After being reclassified as non-exempt, Caremark informed Ms. Villarreal that it would pay her overtime for working more than 40 hours in a workweek. (*Id.*) Prior to that reclassification, Caremark "improperly classified" Ms. Villarreal and "uniformly misrepresented to" her that she was an exempt employee under the FLSA, and thus ineligible for overtime compensation. (*Id*. at 4, ¶ 14; and 5, ¶¶ 20 and 25).

While classified as an exempt employee, Ms. Villarreal "routinely worked over . . . 40[] hours in a workweek[,]" but was "not compensated by [Caremark] with overtime

---

[4] The following facts are as the first amended complaint ("FAC") (Doc. 26) alleges, which the Court accepts as true for purposes of this Rule 12(b)(6) motion only.

[5] For brevity's sake, and because the allegations of the putative collective are nearly identical to those of the named plaintiff, this Order will not distinguish between Ms. Villarreal's allegations and those of the putative collective.

2

pay for the overtime hours [she] worked." (*Id*. at 4, ¶ 16). "By way of example only," Ms. Villarreal alleges that she "regularly worked at least [40] hours in the office during the week, and worked at home on weeknights during those weeks." (*Id*.) Ms. Villarreal further alleges that "[s]he also often worked on the weekends after working at least [40] hours during the week." (*Id*.)

Not only was Caremark "aware of and required this overtime work[]" while denying Ms. Villarreal overtime compensation, but Caremark had a "policy and practice to set project deadlines that required overtime work[.]" (*Id.* at 4, ¶ 18). During the evenings and on weekends, Caremark also called Ms. Villarreal at home requesting that she continue working to meet its deadlines. (*Id*.) Despite being aware of these working conditions, Caremark denied Ms. Villarreal overtime compensation. (*Id*. at 4, ¶ 19).

Purportedly Caremark's "conduct [wa]s willful and in bad faith," as "evidenced by, among other things," its reclassification of Ms. Villarreal to non-exempt, although her "duties remain[] the same[]" as when she was exempt. (*Id*. at 5, ¶ 23). Moreover, when Caremark reclassified Ms. Villarreal's position, it did not compensate her for back pay. (*Id*.) In addition to the foregoing, Ms. Villarreal alleges that Caremark did not "make, keep, and preserve records of the hours worked by" Ms. Villarreal. (*Id.* at 5, ¶ 21).

The FAC contains a single count, alleging a violation of the FLSA for "failure to pay overtime[.]" (*Id.* at 6:12-14) (emphasis omitted). Because she "routinely work(ed) in excess of" 40 hours per week without receiving the "appropriate overtime compensation[,]" Ms. Villarreal alleges that Caremark willfully violated the FLSA. (*Id.* at 6, ¶¶ 31-32; and 34).

Construing the FAC as alleging a "misclassification" claim, Caremark argues that such a claim is not plausible because without more, "an employer's decision to reclassify an employee from exempt to non-exempt . . . does not establish" misclassification. Mot. (Doc. 32-1) at 6:16[6] (emphasis omitted); and 8:5-6. Caremark further argues for

---

[6] For uniformity and ease of reference, all citations to page numbers of docketed items are to the page assigned by the court's CM/ECF system, rather than to the parties' numbered pages.

dismissal of the overtime claim because it lacks the factual specificity which the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), require. In a similar vein, the FAC's allegations regarding Caremark's failure to keep time records are also deficient, Caremark contends, because those allegations are "purely speculative" and without substantiation. *Id.* at 10:27. For all of these reasons, Caremark is seeking dismissal of the FAC with prejudice.

In terms of misclassification, Ms. Villarreal responds that Caremark is impermissibly placing the burden on her, as the employee, to "'unplead'" the employer's affirmative defense that she is exempt under the FLSA. Resp. (Doc. 33) at 9:8 (emphasis omitted). Additionally, despite Caremark's contrary assertion, Ms. Villarreal believes that she has pled sufficient facts to state a claim for unpaid overtime. As to recordkeeping, in her response, Ms. Villarreal explains that she is "alleg[ing] that [Caremark] failed to track and record hours worked because it classified [her] as exempt." Resp. (Doc. 33) at 18:22-23. Plaintiff's response is conspicuously silent, however, on whether she has sufficiently alleged a FLSA recordkeeping claim. In its reply, Caremark reiterates its view that reclassification, standing alone, does not suffice to state a claim under the FLSA. Caremark also continues to maintain that Plaintiff's overtime claim lacks the requisite factual specificity. According to Caremark, the FAC contains nothing more than conclusory allegations which cannot survive a Rule 12(b)(6) motion to dismiss.

**II. Discussion**

    **A. Legal Standards**

        **1. Failure to State a Claim Under Rule 12(b)(6)**

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (internal quotation marks and citation omitted). A

complaint must contain a "short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "To meet this requirement, the Supreme Court has held that an "entitlement to relief" requires "more than labels and conclusions[.]'" *Eclectic Props. E., LC v. Marcus & Milllichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Likewise, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In part, that is because Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Therefore, "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. A complaint need not contain "detailed factual allegations" to avoid Rule 12(b)(6) dismissal. *Id.* However, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Interpreting *Twombly* and *Iqbal*, the Ninth Circuit has discerned "a two-step process" for "[e]stablishing the plausibility of a complaint's allegations[.]" *Eclectic Props.*, 751 F.3d at 995. "First, a court should 'identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* at 996 (quoting *Iqbal*, 556 U.S. at 679); *see also Twombly*, 550 U.S. at 555 (court is "not bound to accept as true a legal conclusion couched as a factual allegation[]"). On the other hand, "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id*. (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). At step two, "a court should 'assume the[ ] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement to relief.'"

*Id.* (quoting *Iqbal*, 556 U.S. at 679). "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. (quoting *Starr*, 652 F.3d at 1216).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 682) (quoting *Twombly*, 550 U.S. at 567). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). Thus, to survive a Rule 12(b)(6) motion, a plaintiff "must include sufficient 'factual enhancement' to cross 'the line between possibility and probability.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 557).

Measuring the FAC against these standards, this Court must "accept[] as true . . . [a]ll well-pleaded allegation of material fact" in the FAC and "construe[]" those facts "in the light most favorable to" Ms. Villarreal as "the non-moving party." *See Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014) (citation omitted).

### 2. Fair Labor Standards Act Claim

"The FLSA requires that employers pay overtime compensation for all hours worked in excess of forty hours in a week unless a particular exemption applies." *Solis v. Washington*, 656 F.3d 1079, 1083 (9th Cir. 2011) (citing 29 U.S.C. § 207(a)(1)). More specifically, the FLSA mandates that "[n]o employer shall employ any of his employees . . . , for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA exempts several categories of employees from the overtime pay requirement. *See* 29 U.S.C. § 213(a).

#### a. Misclassification

Caremark construes the FAC as alleging a "misclassification claim" under the

FLSA, in addition to the expressly pled overtime claim. *See*, *e.g.*, Mot. (Doc. 32-1) at 8:7. Relying upon *Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL 1379778 (S.D.N.Y. March 26, 2010), and *Birdsong v. AT&T Corp.*, 2013 WL 1120783 (N.D.Cal. March 18, 2013), Caremark contends that an "employer's decision to reclassify an employee's exempt status does not establish that the employee was previously misclassified, much less give rise to a per se FLSA violation." Mot. (Doc. 32-1) at 6:22-24. On that basis, Caremark is seeking dismissal of Ms. Villarreal's supposed misclassification claim.

From Ms. Villarreal's standpoint, as earlier noted, Caremark is improperly requiring her to plead that she is exempt from the FLSA's overtime requirements. Ms. Villarreal strenuously argues that because exemption is an affirmative defense, it is Caremark's burden as the employer, not her burden as the employee, to plead and prove that defense.

Ms. Villarreal's position is well-taken. In the first place, the Court has a fundamental disagreement with Caremark's reading of the FAC. The FAC could not be more clear; it alleges a single FLSA count for failure to pay overtime. *See* FAC (Doc. 26) at 6:13-14. It does not allege a separate claim for misclassification or reclassification. Evidently, reclassification is simply a theory under which Ms. Villarreal is claiming entitlement to overtime pay.

Second, the two cases upon which Caremark is so heavily relying to support its misclassification argument are inapposite here. To be sure, as Caremark points out, the *Clarke* court did state that "the mere fact that an employee was reclassified cannot establish an employer's liability for the period prior to the reclassification." *Clarke*, 2010 WL 1379778, at *22. A careful reading of *Clarke* shows that it is distinguishable from the present case, however. Moving for summary judgment, the employer in *Clarke* argued that the employee fell within the FLSA's computer employee exemption for overtime. Agreeing, the *Clarke* court reasoned, among other things, that the plaintiff's "reclassification [wa]s not materially relevant to the determination of whether [he] f[e]ll[] within the computer employee exemption." *Id.* That is because "the exempt status of a

7

given employee depends upon an analysis of the employee's *job duties*. *Id.* (citing, *inter alia*, 29 C.F.R. § 541.2). After a detailed analysis of the employee's job duties, the *Clarke* court found him to "fall squarely within the computer employee exemption[]" to FLSA overtime. *Id.* at *17. In so holding, the *Clarke* court found that "[t]he mere fact of . . . reclassification is not enough to raise a genuine issue regarding [plaintiff's] tax exempt status." *Id.* at 22.

*Clarke* has no bearing on the pleading issues now before this Court for two reasons. First, the issue in *Clarke* was not the sufficiency of the complaint's FLSA claims on a Rule 12(b)(6) dismissal motion. Rather, as just explained, the issue in *Clarke* was a statutory exemption to overtime on a summary judgment motion. So, not only was the issue in *Clarke* entirely different than here, but *Clarke* also was in a different procedural posture, with a fully developed factual record. Second, the quoted excerpt from *Clarke* was merely dicta in that it was not necessary to the court's holding therein. Thus, the Court finds unavailing Caremark's reliance upon *Clarke*.

*Caremark* fares no better with its reliance upon *Birdsong*, 2013 WL 1120783. *Birdsong* and the present case do stand in the same procedural posture; both involve Rule 12(b)(6) motions to dismiss a FLSA cause of action. That similarity is not enough to persuade this Court that *Birdsong* mandates dismissal, as Caremark argues. Based solely upon the earlier quoted comment in *Clarke*, the *Birdsong* court similarly wrote that "[r]eclassification, without more, is insufficient to establish that an employee was misclassified before the reclassification." *Birdsong*, 2013 WL 1120783, at *4 (citation omitted). As just explained though, this Court does not find *Clarke* relevant here. Thus, the Court declines to rely upon *Birdsong*'s recitation of dicta, unaccompanied by any legal analysis, as a basis for dismissing this FAC. Moreover, as will soon become evident, reclassification or misclassification is not a separate, independent element of the only claim the FAC does allege – failure to pay overtime.

### b. Overtime Compensation

"The requirements to state a claim under FLSA are, . . . , quite straightforward."

*Sturm v. CB Transport, Inc.*, 2012 WL 2505289, at *2 (D.Idaho June 28, 2012); *see also Acho v. Cort*, 2009 WL 3572472, at *2 (N.D.Cal. Oct. 27, 2009) ("For an alleged FLSA violation, the requirements are simple and straightforward.") To state a FLSA overtime claim, a plaintiff must allege that she: (1) "was employed by defendant during the relevant period;" (2) was a covered employee; and (3) that "the defendant failed to pay [her] . . . overtime pay." *Quinonez v. Reliable Auto Glass, LLC*, 2012 WL 2848426, at *2 (D.Ariz. July 11, 2012) (citing *Lucas v. Jerusalem Cafe, LLC*, . . . , 2012 WL 1758153 (W.D.Mo. May 10, 2012)[,] [*aff'd on other grounds*, 721 F.3d 927 (8th Cir. 2013), *cert. denied*, 134 S.Ct. 1515 (2014)]) (other citations omitted); *accord Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) ("To state a valid FLSA claim, plaintiffs ha[ve] to allege (1) that they were employed by [Defendant]; (2) that their work involved interstate activity; and (3) that they performed work for which they were undercompensated.")

Despite the simplicity of those elements, "[t]he level of detail necessary to plead a FLSA overtime claim poses a more difficult question --- one that has 'divided courts around the country.'" *Davis v. Abington Memorial Hospital*, 2014 WL 4198903, at *3 (3rd Cir. Aug. 26, 2014) (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2nd Cir. 2013)). And, that pleading issue divides the parties on this motion.

Caremark contends that to comport with the *Twombly/Iqbal* standard, the FAC requires more specificity as to the overtime claim. This lack of specificity argument pertains solely to the third element of such a claim.[7] In particular, Caremark contends

---

[7] Caremark does not dispute the sufficiency of the FAC's allegations as to the first and second elements. With certain statutorily defined exemptions, the FLSA broadly defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "'Employ' includes to suffer or permit work." 29 U.S.C. § 203(g). The FAC alleges that during the relevant time frame Ms. Villarreal was employed by Caremark. FAC (Doc. 26) at 3, ¶¶ 7-8. Thus, the FAC adequately alleges the first element of a FLSA overtime claim.

The FAC also sufficiently alleges the second element – that Ms. Villarreal is a covered employee within the meaning of the FLSA. To be covered by the FLSA's overtime provision, employees must be "engaged in commerce or in the production of goods for commerce, or . . . employed in an enterprise

9

that Ms. Villarreal must allege her "pay rate, her scheduled hours, the actual hours she claims to have worked, or the amount of overtime hours for which she claims Caremark did not pay her." Mot. (Doc. 32-1) at 9:11-13. In the absence of such allegations, Caremark argues for dismissal of the FAC because it does not plausibly state an overtime claim.

Ms. Villarreal counters that there is no requirement that she "plead *which* hours were uncompensated, *how many* hours were uncompensated, or the rate at which those hours must be paid." Resp. (Doc. 33) at 14:27-28 (citations omitted). Furthermore, according to Ms. Villarreal, by alleging facts making it "plausible that she worked over forty hours in a week, at least once, without being paid overtime[,]" she satisfies the *Twombly/Iqbal* standard. *Id*. at 15:708.

On one end of the spectrum, in pleading a FLSA overtime claim, "[s]ome courts have required[,]" as Caremark insists, "plaintiffs to allege approximately the number of hours worked for which wages were not received." *See Abington Memorial*, 2014 WL 4198903, at *3 (citing *Jones v. Casey's Gen. Stores*, 538 F.Supp.2d 1094, 1102–03 (S.D.Iowa 2008) (holding that a complaint alleging that the plaintiffs "regularly worked regular time and overtime each week but were not paid regular and overtime wages" was "implausible on its face" (quotation marks omitted)). "[A]dopting a more lenient approach," other courts have held that "'[w]hile Defendants might appreciate having Plaintiffs' estimate of the overtime hours worked at [the pleading stage],' a FLSA

---

engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. § 207(a)(1). The FAC can easily be read as implicating the latter, enterprise coverage, which "has two separate requirements[.]" See Villalobos v. Guertin, 2009 WL 2579041, at *5 (E.D.Cal. Aug. 29, 2009) (citing Thorne v. All Restoration Servs., 448 F.3d 1264, 1267 (11th Cir. 2006)). The first is participation in interstate commerce, and the second is "annual gross volume of sales made or business done . . . not less than$500,000[.]" 29 U.S.C. § § 203(s)(1)(A)(i)-(ii).

The FAC alleges both. It alleges that Caremark "provides pharmaceutical health care services and products to consumers nationwide." FAC (Doc. 26) at 2, ¶ 6. And, it alleges that "[u]pon information and belief," Caremark's "gross annual sales make or business done have been in excess of $5000,000.00" during the relevant time frame. Id. at 2-3, ¶ 6. "While brief, this allegation, is all that is required at the pleading stage" for this Court "to infer that" plaintiff Villarreal is a "covered employee[] under the FLSA." Perez v. Huang Jackie Jie, 2013 WL 6571861, at *2 (W.D.Wash. Dec. 12, 2013) (citation omitted).

complaint will survive dismissal so long as it alleges that the employee worked more than forty hours in a week and did not receive overtime compensation." *Id*. (citing *Butler v. DirectSat USA, LLC*, 800 F.Supp.2d 662, 668 (D.Md.2011)). Ms. Villarreal essentially contends that the FAC survives dismissal because it comports with this "more lenient approach" to pleading a FLSA overtime claim.

There is another approach though -- "the middle-ground approach" -- as the Third Circuit recently described it. *Abington Memorial*, 2014 WL 4198903, at *3. Under that approach, formulated by the Second Circuit in *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2nd Cir. 2013), "to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given work-week as well as some uncompensated time in excess of the 40 hours." *Id*. at 114 (citing 29 U.S.C. § 207(a)(1) (requiring that, "for a workweek longer than forty hours," an employee who works "in excess of" forty hours shall be compensated time and a half for the excess hours)). This requirement "was designed to require plaintiffs to provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" *DeJesus v. JH Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2nd Cir. 2013) (quoting *Twombly*, 550 U.S. at 570), *cert. denied*, 134 S.Ct. 918 (2014). In accordance with *Iqbal*, the *Lundy* Court reiterated that "[d]etermining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Lundy*, 711 F.3d at 114 (quoting *Iqbal*, 556 U.S. at 679) (footnote omitted). On that basis, the Second Circuit "declined to make an approximation of overtime hours a necessity in all cases[,]" but it did "remark[] . . . that an approximation 'may help draw a plaintiff's claim closer to plausibility.'" *DeJesus* 726 F.3d at 88 (quoting *Lundy*, 711 F.3d at 114 n. 7).

In *Lundy*, the Second Circuit found that the plaintiffs did not plausibly assert a FLSA overtime claim because they did not allege "a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Lundy*, 711 F.3d at 114. Instead, the *Lundy* complaint was replete with allegations such

as the plaintiffs "'typically" worked certain hours; they "typically" had certain break times, and they "typically" worked "an additional 15 minutes per shift." *Id.* at 114-115. All told, however, the alleged hours "did not add up to a claim that *over* forty hours had been worked in any particular week." *DeJesus*, 726 F.3d at 88 (footnote omitted) (emphasis added). Simply put, the *Lundy* allegations "failed because of arithmetic: tallying the plausible factual allegations, [that Court] could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime." *Id.* at 88-89.

The complaint in *Nakahata*, 723 F.3d 192, was similarly deficient. There, the plaintiffs alleged that they "were not compensated for work performed during meal breaks, before and after shifts, or during required trainings[.]" *Id*. at 201. While those allegations "raise[d] the possibility that Plaintiffs were undercompensated in violation of the FLSA[,] . . . , absent any allegation that [they] were scheduled to work forty hours in a given week," the Second Circuit held that such allegations did not state a plausible FLSA overtime claim. *Id*. The *Nakahata* Court reasoned:

> To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.

*Id.* For these reasons, the Second Circuit affirmed the dismissal of the plaintiff's FLSA overtime claims, among others.

Consistent with the foregoing, in *DeJesus*, 726 F.3d 85, the Second Circuit held that plaintiff's FLSA overtime claim was inadequate, and hence properly dismissed. In considering the sufficiency of the alleged overtime claim in *DeJesus*, the Second Circuit looked to *Pruell v. Caritas Christi*, 678 F.3d 10 (1st Cir. 2012), to which Caremark cites in passing. There, the First Circuit focused on plaintiffs' allegation that they "'regularly worked hours over 40 in a week and were not compensated for such time[.]'" *Id.* at 13. The Court deemed the foregoing to be "one of those borderline phrases[,] . . . while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" *Id.* (quoting, *inter alia*,

12

Twombly, 550 U.S. at 557 n. 5) (other quotation marks and citation omitted). "Standing alone," the *Pruell* Court found the quoted allegation to be "little more than a paraphrase of the statute." *Id.*

Finding that reasoning "persuasive[,]" the *DeJesus* Court held that allegations that the plaintiff "in 'some or all weeks' . . . worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation[]" did not sufficiently allege a FLSA overtime claim. *DeJesus*, 726 F.3d at 89 (quoting Compl. ¶ 24). Those allegations were insufficient under *Twombly* and *Iqbal*, the Court reasoned, because, like the *Pruell* allegations, they merely "tracked the statutory language of the FLSA, lifting its numbers and rehashing its formulation[.]" *Id*. The complaint did not include any "particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *DeJesus*, 726 F.3d at 89.

More recently, adopting the Second Circuit's approach in *Lundy*, the Third Circuit held that the district court did not err in dismissing the plaintiffs' FLSA overtime claims. In so holding, the Court explained that not one of the plaintiffs "alleged a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours." *Abington Memorial*, 2014 WL 4198903, at *5. Rather, much like the plaintiffs in *Lundy* and *Nakahata*, the plaintiffs in *Abington Memorial* alleged "that they 'typically' worked at least forty hours per week, in addition to extra hours 'frequently' worked during meal breaks or outside of their scheduled shifts[.]" *Id.* Although it found those allegations did not suffice to state a FLSA overtime claim, the Third Circuit stressed that it is not necessary for a plaintiff to "identify the exact dates and time that she worked overtime." *Id.*

In the absence of controlling Ninth Circuit authority, and after careful consideration of the divergent views as to the degree of specificity necessary to plead a plausible FLSA overtime claim, this Court, like the Third Circuit, adopts the approach of the Second Circuit in *Lundy*. That approach, from this Court's perspective, strikes the appropriate balance between giving a defendant employer, such as Caremark, the notice

13

which Rule 8 envisions, while at the same time requiring plaintiff employees to do more than merely allege or paraphrase the statutory elements. Thus, in accordance with *Lundy* and its progeny, this Court will not, as Caremark suggests, require plaintiff Villarreal to allege approximately how many unpaid hours of overtime she worked over the employment period.

By the same token however, the Court will closely examine the FAC to determine whether it "provide[s] some factual context that will 'nudge' [plaintiff' Villarreal's] claim 'from conceivable to plausible.'" *See DeJesus*, 726 F.3d at 90 (quoting *Twombly*, 550 U.S. at 570). Although admittedly short on detail, the FAC does contain sufficient factual context to state a plausible claim for overtime under the FLSA. The FAC alleges that plaintiff Villarreal "routinely worked over . . . (40) hours in a workweek and w[as] not compensated by [Caremark] with overtime pay for the overtime hours [she] worked." FAC (Doc. 26) at 4:10-12, ¶ 16; s*ee also id.* at 6:23-25, ¶ 31 (same). "By way of example only," Ms. Villarreal alleges that she "regularly worked at least forty hours in the office during the week, and worked at home on weeknights during those weeks." *Id.* at 4:12-14, ¶ 16. Based upon the phrases, "routinely worked" and "regularly worked," Caremark asserts that the FAC contains nothing more than "generic, speculative and legal conclusions" which do not satisfy the pleading standards of *Twombly* and *Iqbal*. *See* Mot. (Doc. 32-1) at 11:12.

Perhaps there would be some validity to that argument if the FAC was limited to only the foregoing allegations. But, in contrast to *Pruell*, 678 F.3d 10, the FAC's allegations pertaining to overtime do not end with a recitation of arguably "boilerplate phrases." *See id.* at 13. Instead, the FAC further alleges that Ms. Villarreal "also often worked on the weekends after working at least forty hours during the week." FAC (Doc. 26) at 4:14-15, ¶ 16. The FAC goes on to allege that Caremark had a "policy and practice to set project deadlines that required overtime work and to call Plaintiff . . . at home during the evenings and on weekends requesting that they continue working in order to meet deadlines." *Id.* at 4:22-24, ¶ 18. When read together, the FAC's allegations

support a reasonable inference that Ms. Villarreal worked more than forty hours in a given week and that she was not compensated for that overtime. *See Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 46 (1st Cir. 2013) (the "fact" that the "basic thrust" of the complaint was that the "defendants' pay practices *continuously* required [their] employees to work time for which they did not receive compensation[] . . . support[ed] the reasonable inference that during any week in which [Plaintiff] was scheduled to work forty hours, she also performed at least some uncompensated work[]").

*Abington Memorial*, 2014 WL 4198903, bolsters this conclusion. Hypothesizing, the Third Circuit explained that "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice[]" to state a plausible claim for overtime under the FLSA. *Id.* at *5. The FAC easily fits into this pleading scenario; and, indeed, alleges more.

Finally, as Caremark notes, the FAC does not include allegations of Ms. Villarreal's pay rate. However, that omission standing alone does nothing to alter this Court's view that the FAC sufficiently alleges an overtime claim. After all, as her employer, Caremark has ready access to Ms. Villarreal's pay rate and, for that matter, her hours worked.

In short, the FAC survives dismissal of the overtime claim because it "allege[s] sufficient factual matter to state a plausible claim that [Plaintiffs] worked compensable overtime in a workweek longer than 40 hours." *See Lundy*, 711 F.3d at 114.

### c. Recordkeeping

There is one other potential claim which the Court must consider. The FAC alleges that Caremark "failed to make, keep, and preserve records of the hours worked by Plaintiff[.]" FAC (Doc. 26) at 5, ¶ 21. The FAC further alleges:

> By failing to record, report, and/or preserve records of hours worked by Plaintiff and the FLSA Collective, Defendant failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment, in

15

violation of the FLSA, 29 U.S.C. § 255(a).[8]

*Id.* The FAC seeks a judgment that Caremark "failed to maintain accurate time records of all the hours worked by Plaintiff . . . in violation of the FLSA[.]" *Id.* at 7, ¶ E. The FAC contains a single count, expressly alleging a violation of the FLSA for "failure to pay overtime[.]" *Id.* at 6:14 (emphasis omitted). Based upon the just quoted allegations, however, Caremark, understandably construes the FAC as attempting to allege a violation of the FLSA's recordkeeping requirements.

Given that construction, Caremark asserts that without more, these speculative, unsubstantiated allegations do not state a plausible claim for a FLSA recordkeeping violation. Plaintiff Villarreal did not respond to this argument. Based on that silence, to the extent that Plaintiff was attempting to allege a recordkeeping violation, the Court deems her to have abandoned such a claim. Strengthening this conclusion is the fact that in its motion to dismiss directed to the original complaint, Caremark challenged the sufficiency of the recordkeeping claim. *See* Mot. (Doc. 25) at 10-11. Therefore, Plaintiff was on notice of the alleged defects in this supposed claim, yet did not address them in the FAC or in response to this dismissal motion. Accordingly, to the extent the FAC can be read as alleging a FSLA recordkeeping violation, the Court grants Caremark's motion to dismiss.

**III. Leave to Amend**

If the Court grants Caremark's motion, which it has, in part, Plaintiff requests leave to amend. The Court is keenly aware that "[l]eave to amend 'shall be freely given where 'justice so requires,'" *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir .2008) (quoting Fed.R.Civ.P. 15), and it should be granted 'unless . . . the pleading could not possibly be cured by the allegation of other facts[.]'" *Lacey v. Maricopa County*, 693 F.3d 896, 939 (9th Cir. 2013) (quoting, *inter alia*, *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012)). Nevertheless, amendment is not warranted

---

[8] Plaintiff's reliance upon section 255(a) is puzzling because it sets forth the statute of limitations for FLSA violations; it does not pertain to recordkeeping. The FLSA's recordkeeping provision is in section 211(c). *See also* 29 C.F.R. 516.1.

here. That is because "'[a]uthority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor.'" *Duff-Brown v. City and County of San* Francisco, 2013 WL 163530, at *6 (N.D.Cal. Jan. 15, 2013) (quoting *Elwell v. Univ. Hospitals Home Care Services*, 276 F.3d 832, 843 (6th Cir. 2002); *see also East v. Bullock's Inc.*, 34 F.Supp.2d 1176, 1183 (D.Ariz.1998) (no private right of action to enforce record-keeping provisions; collecting cases); *Lopez v. Tri–State Drywall, Inc.*, 861 F.Supp.2d 533, 537 (E.D.Pa.2012) (same)). In light of the foregoing, it would be futile to allow amendment as to the supposed recordkeeping claim. Accordingly, the Court will not allow plaintiff Villarreal to amend the FAC with respect to a purported violation of the FLSA's recordkeeping provisions.

**IV. Conclusion**

For the reasons set forth herein, the Court **DENIES** Defendant's Motion to Dismiss First Amended Collective Action Complaint for Damages (Doc. 31) with respect to the alleged overtime violation of the Fair Labor Standards Act, and **GRANTS** that motion to the extent the First Amended Complaint can be read as alleging a violation of the Fair Labor Standards Act's recordkeeping provision.

**Dated** this 8th day of September, 2014.

_____
Diane J. Humetewa
United States District Judge